UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23218-GAYLES/OTAZO-REYES

ZEN GROUP, INC., and CARLOS
OTAMENDI,

    Plaintiffs,

v.

SHEVAUN HARRIS, Acting Secretary,
State of Florida, Agency for Health Care
Administration, in her official capacity,
and KELLY A. BENNETT, individually
and in her official capacity as Chief of the
Office of Medicaid Program Integrity within
the State of Florida, Agency for Health Care
Administration,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Renewed Motion to Transfer Venue and Motion to Dismiss Amended Complaint for its Failure to State a Claim (the "Motion") [ECF No. 20]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

**I.    BACKGROUND**[1]

Zen Group, Inc. ("Zen Group"), provided behavior analysis services to developmentally disabled Medicaid recipients, with its principal place of business in Miami-Dade County, Florida. In 2017, the State of Florida's Agency for Health Care Administration ("AHCA" or "Agency")

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiffs' allegations in the Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

implemented a Behavior Analysis Services Program. Under the program, the Agency paid behavioral services providers, such as Zen Group, for providing services to Medicaid recipients.

On February 14, 2019, the Agency issued a Final Audit Report ("Report") in which it claimed that Zen Group was overpaid $1,376,226.46 for services not covered by Medicaid. Specifically, the Report claimed that the services Zen Group provided to Medicaid recipients were "rendered by an individual determined not to meet the qualifications or for whom documentation was insufficient to determine eligibility." Pursuant to the language of the Report, the Report itself constituted a probable cause determination that Zen Group was overpaid by the Medicaid program. Consequently, the Agency demanded that Zen Group repay the Agency $1,644,402.69 (the "Demand"). Under Florida Statute §§ 120.569 and 120.57, Zen Group had the right to request an administrative hearing to challenge the Demand. Accordingly, on March 7, 2019, Zen Group sought administrative review of the Demand pursuant to the First and Fourteenth Amendments to the United States Constitution.

During the pendency of the administrative action, the Agency withheld $737,000.00 in payments to Zen Group for services it rendered to Medicaid patients, which were unrelated to the claims set forth in the Report. Zen Group's administrative hearing was set for October 29–31, 2019, but on August 15, 2019, the hearing was rescheduled for January 14–16, 2020. On October 15, 2019, Zen Group moved for sanctions, pursuant to Florida Statute § 120.57, alleging that the Agency wholly mismanaged the Behavior Analysis Services Program from the outset and attempted to use the Report to retroactively adopt a non-rule policy and impose it on Zen Group.

Shortly after Zen Group's Motion for Sanctions, the parties engaged in settlement discussions where the parties agreed that the Agency would retain approximately $70,000 of the money it withheld from Zen Group and it would pay back over $665,000 to Zen Group. Moreover,

the parties agreed that the money retained by the Agency would not be characterized as "an overpayment" and the Agency would remove any fines or sanctions. As a part of settlement discussions, Zen Group requested the inclusion of a non-retaliation provision in the settlement agreement, whereby the Agency would not take any adverse actions against Zen Group based on the settlement, its terms, or any of the conduct underlying this case. The Agency refused to agree to a non-retaliation clause, noting that "such relief is not available." Nonetheless, the parties executed the settlement agreement.

On January 9, 2020, the Agency paid Zen Group the amount due under the settlement agreement. The next day, the Agency suspended Medicaid payments to Zen Group pursuant to 42 C.F.R. § 455.23, which provides that a state Medicaid agency may suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending. In connection with this suspension, the Agency issued a letter noting that there were general allegations against Zen Group for billing for services not rendered. Defendant Kelly A. Bennett, Chief of the Agency's Office of Medicaid Program Integrity ("MPI"), signed-off on the suspension.

Zen Group later learned that it was being investigated by the Medicaid Fraud Control Unit ("MFCU"). Zen Group fully complied with the investigation by sharing information with the MFCU investigator but maintained that it did not commit any fraud. On January 28, 2020, Zen Group sent Bennett the materials it prepared for the MFCU investigator and requested that Bennett confirm which patient was the subject of the investigation. Bennett responded, "I can't comment on this investigation." [ECF No. 17 ¶ 52]. Bennett refused to provide further information by telephone, as well. Further, Bennett never responded to Zen Group's request to terminate the payment suspension and never corresponded with Zen Group or its counsel after January 28, 2020.

Around January 29, 2020, the MFCU investigator provided Zen Group with an update on the investigation and stated that he found evidence verifying that the billings in dispute were correct. He further explained that uncontroverted evidence did not support the Agency's allegations of fraud. On February 18, 2020, the MFCU Investigator updated Zen Group about his intention to close the investigation for lack of evidence. However, he had to wait for approval from Hagerenesh Ketema Simmons, the Regional Chief Assistant Attorney General for the MFCU in Miami, Florida.

During the week of March 16, 2020, the MFCU received two packages from the MPI—each referring a purported allegation of fraud by Zen Group. Bennett was responsible for the MPI referrals to the MFCU. One of the referrals related to the very same alleged overpayment allegation previously brought by the Agency which was settled. The other referral related to Zen Group's billing regarding services rendered and billed in 2017 for one patient.

On April 9, 2020, almost three full months after the Agency suspended Medicaid payments to Zen Group, Zen Group informed Assistant Attorney General Jose Marti, who acted in an investigatory capacity in this case, that due to the payment suspension, the company is in a dire financial condition and is at risk of closing. Zen Group offered to assist in the investigation in any way and noted that time is of the essence. On April 13, 2020, Zen Group emailed the Assistant Attorney General again explaining that Zen Group was suspending services on April 15, 2021. After May 5, 2020, Zen Group received no further updates on the investigation.

On August 3, 2020, Plaintiffs Zen Group and its owner, Carlos Otamendi, commenced this lawsuit raising various federal and state claims against the AHCA; Mary C. Mayhew, former Secretary of the AHCA; and Bennett. [ECF No. 1]. On August 21, 2020, Bennett sent a letter to Zen Group, stating the payment suspension had been lifted. Defendants moved to transfer venue

4

and dismiss the Complaint on September 25, 2020. [ECF No. 12]. On October 23, 2020, Plaintiffs filed their Amended Complaint bringing six counts against Bennett and Secretary Mayhew[2]: 42 U.S.C. § 1983 claims against Bennett and Secretary Mayhew for violations of the Fourteenth Amendment (Count I) and the First Amendment (Count II); a request for declaratory relief against Bennett and Secretary Mayhew (Count III); and Florida state law claims against Bennett for tortious interference with business relations (Count IV), defamation (Count V), and outrageous conduct causing severe emotional distress (Count VI). [ECF No. 17]. In response, Defendants filed their Renewed Motion to Transfer Venue and Motion to Dismiss Amended Complaint for its Failure to State a Claim. [ECF No. 20]. Defendants argue that venue in the Northern District of Florida is proper and considerations of convenience and justice weigh in favor of transfer under 28 U.S.C. § 1404. Further, Defendants argue that Plaintiffs have not stated a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.     MOTION TO TRANSFER VENUE**

    **A.     LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To assess the propriety of transfer under Section 1404(a), courts engage in a two-step analysis. *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). First, courts determine whether the action could have been brought in the venue to which transfer is sought. *Id*. Second, courts weigh various private and public interest factors to determine whether convenience and the interest of justice require transfer to the requested forum.

---

[2] Shevaun Harris is now the Acting Secretary for the AHCA and has been substituted for Secretary Mayhew as a defendant in this action.

*Id*. Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

**B.  DISCUSSION**

Defendants contend, and Plaintiffs do not contest, that this action could have been brought in the Northern District of Florida. Pursuant to § 1391(b), venue is proper when it is brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if neither of these apply, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(1)–(3). Here, all the defendants are residents of Florida and at least one defendant is a resident of the Northern District of Florida. Thus, the first prong to satisfy a motion to transfer is met.

As to the second prong, Defendants argue that the considerations of convenience and justice weigh in favor of transfer. The Court disagrees.

Here, the convenience of the parties and witnesses weighs in favor of Plaintiffs. One of the most important factors in determining whether transfer should be granted is the convenience of

both the party and non-party witnesses. *Osgood*, 981 F. Supp. 2d at 1264 (citation omitted). "When weighing the convenience of the witnesses, a court does not merely [compare] the number of witnesses who reside in the current forum . . . to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Id.* (quotations omitted). While the Court recognizes that Defendants, who conducted an audit of Zen Group, suspended payments, and referred the case to the MFCU, reside in the Northern District, Plaintiffs provide a long list of potential key witnesses located in the Southern District, including themselves, the MFCU investigator, Assistant Attorney General Jose Marti, and the patients upon whom Bennett based her referrals. The testimony of those witnesses would be critical to understanding the underlying conduct which gave rise to the Report, payment suspension, and this litigation. [ECF No. 23 at 14].

Further, the location of relevant documents and relative ease of access to sources of proof weigh neutral as there are pertinent documents in both districts. Because the MFCU investigation took place in Miami, the MFCU investigator's closing report indicates that "[a]ll of the evidence is being held at the Office of the Attorney General, Medicaid Fraud Control Unit, Miami Bureau . . . ." [ECF No. 23-1 at 9]. But also, the Report and Plaintiffs' petition for administrative hearing, and all documents related to them, are located near the Agency's headquarters in Tallahassee, Florida.

The locus of operative facts also weighs against transfer. "The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-cv-24803, 2020 WL 6120565, at *6 (S.D. Fla. June 29, 2020), *report and recommendation adopted*, No. 19-cv-24803, 2020 WL 6120554 (S.D. Fla. July 21, 2020). As Defendants put it, "the crux of Plaintiffs' [claims] is that Defendants improperly determined there

had been a 'credible allegation of fraud' and suspended Medicaid payments to Zen Group in retaliation . . . ." [ECF No. 20 at 7]. Thus, substantial evidence of Zen Group's alleged misconduct is located at its principal place of business in Miami.

The relative means of the parties, specifically which party is best positioned to endure the financial burden imposed by litigating in a faraway forum, weighs against transfer. *See Stokes v. Markel Am. Ins. Co.*, No. 19-CV-20404, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019) ("A clear financial discrepancy between the parties is often an important factor in determining proper venue."). As stated in the Amended Complaint, Plaintiffs have been financially devastated as a result of Defendants' conduct. Conversely, Defendants are State of Florida officials who can presumably litigate this case statewide. Further, the availability of process to compel unwilling witnesses is neutral as there are witnesses in both districts, and the reach of both federal district courts is equal.

The forum's familiarity with the governing law is neutral as the Northern and Southern Districts are equally capable of handling this matter. Moreover, Plaintiffs chose to litigate in their home forum, so the Court must afford considerable deference to that decision. Finally, trial efficiency and the interests of justice weigh against transfer because a substantial number of key witnesses are in the Southern District of Florida.

After weighing the factors, the Court concludes that transfer is not warranted. Defendants' Motion to Transfer is denied, and the case shall proceed in the Southern District of Florida.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleadings are construed broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

    **B.**    **DISCUSSION**

In their Motion to Dismiss, Defendants only ask that the Court dismiss counts I, II, III, V, and VI. The Court examines each count in turn.

    **1.**    **Count I – Fourteenth Amendment Violation**

In Count I, Plaintiffs allege that Defendants sought to deprive them of their liberty and property in violation of the Fourteenth Amendment when the Agency imposed the Demand. They also allege that Bennett retaliated against Plaintiffs when they exercised their constitutional right to challenge the Demand in an administrative hearing. Defendants seek dismissal of this Count, arguing that Plaintiffs fail to demonstrate the existence of a protected property interest and because the Eleventh Circuit has not recognized a Fourteenth Amendment retaliation claim.

To state a § 1983 claim for a Fourteenth Amendment procedural due process violation, for retaliation or otherwise, Plaintiffs must show "(i) a deprivation of a constitutionally protected property interest, as a result of (ii) state action, and (iii) without the benefit of constitutionally adequate process." *Kupke v. Orange Cty., Fl.*, 293 F. App'x 695, 697 (11th Cir. 2008) (citing

*Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Here, Plaintiffs allege that they had a property interest in the money the Agency paid to Zen Group for services provided prior to the Demand. However, "[t]his Court is unaware of binding Eleventh Circuit precedent on the issue of whether a healthcare provider has a constitutionally[]protected property interest in [Medicaid] payments that may be subject to a recoupment action." *Alpha Home Health Sols., LLC v. Sec'y of United States Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1291, 1301 (M.D. Fla. 2018).

In *Alpha Home*, the Middle District of Florida addressed this issue in 2018. As explained by that court, to have a protectable property interest in a benefit, such as a Medicare or Medicaid payment, a person or entity must have a legitimate claim of entitlement to it. *Id.* (quotations omitted). A person's entitlement to property is embodied in statutes, regulations, and ordinances, or express or implied contracts. *Id.* at 1302. In *Alpha Home,* the court found that under the Medicare Act, payments made prior to audit are subject to recoupment, thereby rendering payments to Medicare providers contingent. Therefore, the "contingent nature of the payment system [in the statute] makes clear that a health care provider lacks a constitutionally protected interest in an overpayment of federal funds." *Id.* at 1303.

Similarly, in this case, Florida state law permits the Agency to withhold Medicaid reimbursement payments from Zen Group, a provider, if the Agency makes a probable cause determination that overpayment occurred. *See* § 409.913(27)(a), Fla. Stat. Federal regulations also require that the Agency suspend payments to Zen Group during the fraud investigation if there is a credible allegation of fraud unless there is good cause to continue payments. *See* 42 C.F.R. § 455.23(a)(1). Because Zen Group's reimbursement payments are contingent on payment determinations by the Agency, as prescribed by state and federal rules, Plaintiffs do not have a property interest in the payments. *See Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572

(S.D. Tex. 2018), *aff'd*, 975 F.3d 523 (5th Cir. 2020) ("Plaintiff is not entitled to hang onto property to which Plaintiff was never entitled."); *Pers. Care Prod., Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011) ("Nothing in Texas or federal law extends a property right in Medicaid reimbursements to a provider that is the subject of a fraud investigation."); *Yorktown Med. Lab'y, Inc. v. Perales*, 948 F.2d 84, 89 (2d Cir. 1991) ("[The New York State Department of Social Services ("DSS")] promulgated regulations authorizing it to audit, verify, and withhold payment for claims submitted by Medicaid providers pending a DSS final determination. Thus, [plaintiff] has no property interest grounded in either the Medicaid Act or New York regulations to payment for claims pending investigation to determine illegality.") (citations omitted). Because Plaintiffs have not alleged a constitutionally protected property interest, Plaintiffs have not stated a § 1983 claim for Fourteenth Amendment violations.[3] Therefore, the Motion to Dismiss Count I is granted.

### 2.     Count II – First Amendment Violation

In Count II, Plaintiffs assert a First Amendment retaliation claim against Defendants. To state a § 1983 First Amendment retaliation claim, a plaintiff must show: "(1) [it] engaged in constitutionally protected speech, such as [the] right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech . . . ; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech . . . ." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019), *cert. denied sub nom. DeMartini v. Town of Gulf Stream, Fla.*, 141 S. Ct. 660 (2020). Here, Defendants do not contest the second or third elements. Their only contention is Plaintiffs' petition for administrative review of the Demand is not constitutionally protected speech under the First

---

[3] Having found that Plaintiffs have not established a § 1983 Fourteenth Amendment claim, the Court need not address whether Defendants are entitled to qualified immunity or whether Count I is barred by sovereign immunity.

Amendment. Specifically, Defendants argue that Plaintiffs did not speak as citizens on a matter of public concern and therefore fall out of the purview of First Amendment protection.

The First Amendment protects independent contractors from adverse actions taken by the government in retaliation for the exercise of free speech. *BMI Salvage Corp. v. Manion*, 366 F. App'x 140, 143 (11th Cir. 2010). However, this protection is not absolute. Courts apply a balancing test to determine the extent that speech is protected. *See Bd. of Cty. Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 673 (1996). In deciding whether speech is protected, the court must determine whether the independent contractor spoke as a citizen on a matter of public concern. *See BMI*, 366 F. App'x at 143. If the independent contractor does not speak primarily in its role as a citizen, its speech is not protected. *Id.*

Here, the parties do not dispute that Zen Group is an independent contractor. *See* [ECF No. 17 ¶¶15, 16] (alleging that Zen Group contracted with the government to provide Medicaid services pursuant to a Non-Institutional Medicaid Provider Agreement). Zen Group, as an independent contractor, filed a petition for administrative review of the Demand. In its petition, Zen Group did not challenge the Behavior Analysis Services Program or Agency policies generally; rather, Zen Group's petition pertained only to its individual grievance. As such, Zen Group did not speak as a citizen on a matter of public concern but in its capacity as a medical provider. *See BMI*, 366 F. App'x at 144 ("The purpose of BMI's statements was not to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials nor to report specific wrongs and abuses by the Department in an attempt to improve the quality of government. Rather, the purpose was to air its individual grievances with the Department . . . . In sum, BMI spoke not in its role as a citizen, but in its role as a lessee."). Therefore, Zen Group's speech is not protected under the First Amendment. *See Blanchard v. City of Winter Haven*, No.

8:09-CV-2049-T-33AEP, 2011 WL 1166892, at *8 (M.D. Fla. Mar. 28, 2011) (finding that plaintiff's speech was not protected by the First Amendment when the complaint was not filed in Blanchard's role as a citizen because its purpose was "not an attempt to improve the quality of government" but was, instead, "private in nature."). As Plaintiffs fail to state a § 1983 claim for First Amendment violations,[4] the Motion to Dismiss is granted as to Count II.

### 3. Count III – Declaratory Judgment

In Count III, Plaintiffs seek a declaratory judgment by this Court that no verified "credible allegation of fraud" justifies the payment suspension AHCA imposed on Zen Group pursuant to 42 C.F.R. § 455.23. Defendants argue that because the Medicaid suspension regulation does not create a private cause of action, the Court should decline jurisdiction and dismiss this claim. Plaintiffs have not responded to this argument. As such, the Court deems this Count abandoned. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *A1 Procurement, LLC v. Hendry Corp.*, No. 11-cv-23582, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) ("Failure to respond to arguments in a motion to dismiss is a sufficient basis to dismiss such claims by default under [] Local Rule [7.1(c)]"). Accordingly, the Motion to Dismiss Count III is granted.

### 4. Count V – Defamation

In Count V, Plaintiffs allege a claim for defamation against Bennett based on her claims to the MFCU regarding Zen Group's alleged fraud. Defendants argue that Plaintiffs fail to allege that Bennett made or published a false statement as required. The Court disagrees.

---

[4] Having found that Plaintiffs have not established a § 1983 claim for First Amendment violations, the Court need not address whether Defendants are entitled to qualified immunity or whether Count II is barred by sovereign immunity.

To state a cause for defamation, the plaintiff must allege: "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to another." *Aflalo v. Weiner*, No. 17-CV-61923, 2018 WL 3235529, at *1 (S.D. Fla. July 2, 2018) (quoting *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (applying Florida law)). Here, Plaintiffs allege that Bennett published false statements to third parties—the MFCU investigator and/or other MFCU employees. "Publication of defamatory matter is communication of the statement to a third person[,]" so long as "the party hearing or seeing the purported defamation is [not] so closely connected with the potential defamation plaintiff or defendant that they merge into a single entity . . . ." *Hoch v. Loren*, 273 So. 3d 56, 57 (Fla. Dist. Ct. App. 2019). Specifically, Plaintiffs allege that "Bennett published to Pedro Pidermann and/or other employees of [MFCU] a false claim that Bennett and/or AHCA's Office of Medicaid Program Integrity had received a verified 'credible allegation of fraud' against Zen Group." [ECF No. 17 ¶ 176]. It cannot be said that the Agency (or Bennett) and MFCU are so closely connected as to merge into a single entity. Plaintiffs further allege that this statement was defamatory because it implicated Zen Group in criminal conduct, caused reputational harm, and resulted in the suspension of medical payments for over six months. These allegations are sufficient to state a claim for defamation under Florida law. As such, the Motion to Dismiss is denied as to Count V.

### 5. Count VI – Outrageous Conduct Causing Severe Emotional Distress

Defendants argue that Plaintiffs failed to establish that Bennett engaged in outrageous behavior to support their Count VI claim for outrageous conduct causing severe emotional distress, also referred to as intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must prove "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional

distress; and (4) the distress was severe." *Haberski v. Bufano*, 728 F. App'x 903, 909 (11th Cir. 2018). Liability attaches to conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* But, "liability [] does not extend to . . . false accusations." *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004). Here, Plaintiffs allege that Bennett provided false information about a credible allegation of fraud to MFCU in retaliation for Zen Group exercising its constitutional rights. However, this "false accusation" does not constitute outrageous conduct. Because Plaintiffs have not sufficiently stated a claim for intentional infliction of emotional distress, Count VI is dismissed.

## IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that

1. Defendants' Renewed Motion to Transfer Venue and Motion to Dismiss Amended Complaint for its Failure to State a Claim, [ECF No. 20], is **GRANTED in part**.

2. This case shall proceed in the Southern District of Florida.

3. Counts I, II, III, and VI are **DISMISSED without prejudice.**

4. The Motion is **DENIED** as to Count V.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of September, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE